UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

ACHYUT M. TOPE,
Plaintiff

Civil Action No.: 3:16-cv-02075

v.

HSBC MORTGAGE CORPORATION USA, et al.
Defendants

APRIL 27, 2017

FILED
2017 APR 28 PM 2 07
U.S. DISTRICT COURT

**REPLY IN OPPOSITION TO DEFENDANTS' HSBC MORTGAGE CORPORATION USA, ET AL. RULE 12(b)(6) MOTION TO DISMISS PER COURT PERMISSION**

## PRELIMINARY STATEMENT

Bank of New York, in their motion to dismiss, stated that in Connecticut, the "mortgagee and noteholder have the independent authority to foreclose on the mortgage." See, e,q., Motion to Dismiss, p.11 ¶ 1. This is a misstatement of the law. It is Black letter law that the mortgage follows the note" To further compound this misstatement, in their Reply, Defendants allege that the "issue" is not who held the Note but "whether Defendants had authority to foreclose on Plaintiff's mortgage generally…" Defendants Brief p. 6. But, since they maintained that the foreclosure action, under their misstatement of the law could have occurred either by the note or the mortgage, they have not shown that the issue of the Note was ever litigated. There are currently pending issues before the State Court because Defendants filed a "Affidavit of Loss Mitigation" when commencing the foreclosure action, stating HSBC was the plaintiff, not Bank of New York, wrongfully did not check the box regarding the fact that the loan was a Freddie Mac/Fannie Mae loan, and only their servicer has authority to foreclose on the Note, wrongfully checked the box that the loan was not federally funded, as well as not showing a nexus between the Note, being specially endorsed to JP Morgan, as trustee and not to Bank of New York. The

action in the state court is still pending and is not final as of 4/24/2017, when Defendants filed a non-responsive opposition brief and oral argument has been extended but not scheduled yet.

I. **STANDARD FOR MOTION TO DISMISS**

In reviewing a pro se case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" Govan v. Campbell, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). " Even Defendants concede that. The Second Circuit has stated that" '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). ("We read [the pro se party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Hanlin v. Mitchelson, 794 F.2d 834, 838-39 (2d Cir. 1986) (citing Haines to support the principle that pro se pleadings are given a liberal construction); A court may dismiss an action pursuant to Fed. R. Civ. P. 12(b)(6) only if "it appears beyond doubt that [a] plaintiff can prove no set of facts in support of his claim which will entitle him to relief." Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517, 526 (2d Cir. 2001)(quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 [1957]). In considering the motion, the court must take "as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Jackson Nat'l Life Ins. v. Merrill Lynch & Co., 32 F.3d 697, 700 (2d Cir. 1994). The court may consider all papers and exhibits appended to the complaint as well as any matters of **which judicial notice may be taken**. Defendants concede this as well that judicial notice may be taken, especially on a Motion to Dismiss based on res judicata. See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). "A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the

merits." Baker v. Cuomo, 58 F.3d 814, 818 (2d Cir. 1995). Fed. R. Civ. P. 8(a) requires that a pleading, whether an original claim, counterclaim, cross-claim or third party claim, contain "a short and plain statement of the grounds upon which the court's jurisdiction depends … and a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(e) advises, among other things, that every averment in a pleading must be simple, concise and direct. Furthermore, the pro se litigant's submissions should be interpreted so as "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). …" With respect to pro se litigants, "[w]hile pro se complaints must contain sufficient factual allegations to meet the plausi-bility standard," the Second Circuit "look[s] for such allegations by affording the litigant 'special solicitude, interpreting the complaint to raise the strongest claims that it suggests.'" O'Callaghan , 563 Fed. Appx. 11, 2014 WL 1422395, (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) and citing and quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)). Because "most pro se plaintiffs lack familiarity with the formalities of pleading requirements, [courts] must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than [it] would when reviewing a complaint submitted by counsel." Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002) (citation and internal quotations omitted). "[P]ro se litigants . . . cannot be expected to know all of the legal theories on which they might ultimately recover," and, therefore, "[i]t is enough that they allege that they were injured, and that their allegations can conceivably give rise to a viable claim." Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir.2005)."

The Note is the key issue in this case which was raised in pro se Plaintiff's complaint p¶ 58. The Mortgage follows the Note. Mortgagee has no independent right to foreclose without the Note, despite Defendants misstatement of the law that a mortgagee has an independent right to foreclose.

## II. COURTS CAN TAKE JUDICIAL NOTICE OF DOCUMENTS NOT ATTACHED TO THE COMPLAINT

The Court is entitled to take judicial notice of court records in evaluating a motion to dismiss. Defendants concede this also in their brief. If the Court decides to rule on issue preclusion on a motion to dismiss, this is imperative that the Court take judicial notice of the state court proceedings. See, e.g., Ambase Corp v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72-72 (2d Cir. 2003); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts Plaintiff's Securitization Report was submitted in the state court proceedings in BONY Docket No. 150

## 111 CONNECTICUT LAW -RES JUDICATA PLEADED AS SPECIAL DEFENSE

"Courts in Connecticut apply the procedural law of the forum state irrespective of the applicable body of substantive law. Paine Webber Jackson & Curtis, Inc. v. Winters, 22 Conn. App. 640, 650, 579 A.2d 545 (1990)." Messler v. Barnes Group., Inc., No. CV 960560004, 1999 Conn. Super. LEXIS 239, 1999 WL 61034, at 3 (Conn. Super. Feb. 1, 1999) Doe No. 1 v. Knights of Columbus, 930 F. Supp. 2d 337, 352-53 (D. Conn. 2013) In Connecticut, res judicata should be raised as a special defense and is not a proper ground for a motion to dismiss; Labbe v. Pension Commission, 229 Conn. 801, 816, 643 A.2d 1268 (1994) ("res judicata does not provide the basis for a judgment of dismissal; it is a special defense that is considered after any jurisdictional thresholds are passed");the doctrine of res judicata is not included among the permissible grounds on which to base a motion to dismiss. Practice Book § 10-31. Neither res judicata nor collateral estoppel can be raised properly in a motion to dismiss under Connecticut's rules of practice. 169 Olive Street, LLC v. Sharyn D'Urso et al 2010 Conn. Super. LEXIS 1949

## 1V. NO RES JUDICATA OR COLLATERAL ESTOPPEL

The doctrine of collateral estoppel may only properly be applied **to the facts underlying the judgment**, In re Sloan, 18 B.R. 1021 (Bkrtcy.E.D.N.Y.1982). Four criteria must be met before collateral estoppel effect may be given to factual issues **underlying a prior action:** (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated;(3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. In re McMillan, 579 F.2d 289, 291-292 (3d Cir.1978). All four criteria have to be met. Under Connecticut law. . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action.. . . Whenever collateral estoppel is asserted . . . the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a crowning consideration in collateral estoppel cases . . . [I]f the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." (Citations omitted; internal quotation marks omitted.) Gateway, Kelso & Co. v. West Hartford No. 1, LLC, 126 Conn.App. 578, 583-84, 15 A.3d 635, cert. denied, 300 Conn. 929, 16 A.3d 703 (2011). Defendants failed to meet their burden that the issue of the Note was never litigated, that the Note was specially endorsed to JP Morgan, trustee, not Bank of New York, that the Note was a Freddie Mac/Fabbie Mae Note which can only be foreclosed on by their servicer who has yet to be determined and the Affidavit of Loss Mitigation which stated that the Plaintiff was HSBC Mortgage, not Bank of New York, and falsely stated that this was not a government backed Note. (See Exhibits A-Note, B-Mortgage, C-Affidavit of Loss Mitigation, D- Motion for lack of subject Matter Jurisdiction -3/24/17) Defendants circumvent the "standing issue" which implicates the Note, by misstating the law in their original motion to dismiss, alleging p.11¶ 1 "to the extent that Plaintiff alleges that the foreclosing entity must hold the note (in addition to the mortgage) to foreclose (Plaintiff's Complaint ¶ 58), such a claim is erroneous as a matter of law in Connecticut, both mortgagee and noteholder have the independent authority to foreclose"

Defendants had no standing to foreclose on the mortgage alone. The Note and the Standing issue were never litigated at all despite Plaintiff's requests for an evidentiary hearing. The following is Defendants entire collateral estoppel argument ""whether Defendants had authority to foreclose on Plaintiff's mortgage generally…" Defendants Brief p. 6 ¶1. This hardly meets their burden to invoke the harsh doctrine of collateral estoppel. . The issue is who was the proper party to foreclose.

Since the Note was specially endorsed to JP Morgan from HSBC, the only party that has authority to foreclose is JP Morgan, not Bank of New York Mellon. This issue was not litigated at all and is being raised at this time, awaiting scheduling from the Court for oral argument. (See Docket No.). A sub-issue waiting determination is that the Affidavit of Loss Mitigation which commenced the foreclosure stated that HSBC was the Plaintiff in the case, not BONY. The Loss Mitigation Affidavit also stated that the loan was not federally funded and did not check the box which stated that this was a Freddie Mac/Fannie Mae loan which is clearly stated on both the loan and mortgage deed. Plaintiff has not been afforded an evidentiary hearing as well. This being a Freddie Mac/Fannie Mae loan, only their servicer has the authority to foreclose on the Note.

Plaintiff respectfully requests defendants motion to dismiss be denied in its entirety.

Respectfully Submitted,

Achyut M. Tope, Plaintiff Pro Se

## Certification

Dated: April 27, 2017

I hereby certify that this document filed in person at the District Court in New Haven CT, on April 27, 2017 and the registered Defendants will receive copies electronically from the Court. A courtesy copy has been mailed to the District Court in Bridgeport.

Achyut M Tope

Plaintiff Pro Se

Plaintiff's Notes & Assignments

① Docket # 110

② Docket # 143.

EXHIBIT

A

[redacted]= redacted information

# FIXED/ADJUSTABLE RATE NOTE

rom Tope [redacted]

(One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| October 31, 2003 | FAIRFIELD | CONNECTICUT |
|---|---|---|
| [Date] | [City] | [State] |

387 SHERMAN AVENUE, NEW HAVEN, CT 06511

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $134,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.6250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on December 01, 2003.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 01, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY 14043

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $771.38. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November, 2006, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.



EMC IMAGED

IMAGED EMC

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seven Eighths percentage points ( 2.8750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.6250 % or less than 3.6250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.6250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

______________________ (Seal)
ACHYUT M. TOPE -Borrower

POA Geeta A. Joshi - Tope
______________________ (Seal)
GEETA A. JOSHI - TOPE -Borrower

______________________ (Seal)
-Borrower

______________________ (Seal)
-Borrower

______________________ (Seal)
-Borrower

______________________ (Seal)
-Borrower

______________________ (Seal)
-Borrower

______________________ (Seal)
-Borrower

Pay to the order of, without recourse JPMorgan Chase Bank, as Trustee

______________________

HSBC MORTGAGE CORPORATION (USA)

By: ______________________
Nilda Feliz
Vice President

*[Sign Original Only]*

CD 2030

[redacted] = redacted information

[redacted]

# FIXED/ADJUSTABLE RATE NOTE

(One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| October 31, 2003 | FAIRFIELD | CONNECTICUT |
|---|---|---|
| [Date] | [City] | [State] |

387 SHERMAN AVENUE, NEW HAVEN, CT 06511

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $134,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.6250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on December 01, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 01, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY 14043

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $771.38. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November, 2006, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.



Initials: AMP

GAE

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seven Eighths percentage points ( 2.8750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 7.6250 % or less than 3.6250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.6250 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____________________ (Seal) -Borrower
ACHYUT M. TOPE

PoA Geeta A. Joshi - Tope
_____________________ (Seal) -Borrower
GEETA A. JOSHI - TOPE

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

Pay to the order of, without recourse

_____________________

HSBC MORTGAGE CORPORATION (USA)

By: _____________________
Nilda Feliz
Vice President

*[Sign Original Only]*

CD 2030

[redacted]

Plaintiff Affidavits

(1) Docket # 110 &

(2) Docket # 143.

EXHIBIT

~~A~~ B

| | | |
|---|---|---|
| DOCKET NO. NNH-CV-14-6048487-S | : | SUPERIOR COURT |
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-3<br>Plaintiff, | : | JUDICIAL DISTRICT OF<br>NEW HAVEN |
| v. | : | AT NEW HAVEN |
| TOPE, ACHYUT M. , ET AL,<br>Defendant(s). | : | |

## AFFIDAVIT OF DEBT

Brian Boisen, being of lawful age and being first duly sworn on oath, states and deposes as follows:

1. I am employed as a(n) Assistant Vice President by PHH Mortgage Corporation ("Servicer"), the servicer for the loan at issue in this proceeding ("Loan"). The Servicer is providing mortgage loan services to The Bank of New York Mellon, FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2004-3 ('Plaintiff'), and is authorized to act on its behalf. I am over the age of eighteen years, and I am authorized to make this Affidavit on behalf of the Servicer. If sworn as a witness I can competently testify to the matters stated herein. The statements set forth in this Affidavit are true and correct, to the best of my knowledge and belief.

2. In the regular performance of my job functions, I have access to and am familiar with business records maintained by the Servicer for the purpose of servicing mortgage loans. I have personal knowledge of the manner in which these business records are created. These records (which include data compilations, electronically imaged documents, and others) are: (a) made at or near the

time of the occurrence of the matters set forth by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business conducted by the Servicer. It is the regular practice of the Servicer to make and receive such records. To the extent records related to the Loan come from another entity, those records were received by Servicer in the ordinary course of its business, have been incorporated into and maintained as part of Servicer's business records, and have been relied on by Servicer. In connection with making this Affidavit, I reviewed and relied on those business records concerning the Loan.

3. The Servicer, or counsel as its agent, is in possession of the original promissory note and/or loan agreement ("Note") for this Loan, bearing the date of October 31, 2003, in which the Defendant(s) Achyut M. Tope and Geeta A. Joshi-Tope promised to pay the sum of $134,000.00.

4. The Note is secured by a mortgage ("Mortgage") dated October 31, 2003, on real estate together with all improvements thereon, located at 387 Sherman Avenue, New Haven, CT 06511 ("Real Estate").

5. The payment due on October 1, 2013, and all payments thereafter have not been made according to the terms of the Note and the Mortgage. The Loan is currently due and payable in full by virtue of the acceleration of the Loan pursuant to the terms of the Note and Mortgage.

6. As of September 24, 2014, as reflected in Servicer's business records (consisting of the Note, Mortgage and a printout from the electronic servicing system), attached hereto as Exhibit "A," there is due and owing on the Loan the sum of $113,351.50, which amount due includes the following:

| | |
|---|---|
| Principal Balance: | $107,056.69 |
| Interest through 10/01/2014 at the current rate of 3.00%: | $3,479.32 |
| Advances for Property/Hazard Insurance: | $466.21 |
| Advances for Taxes: | $2,178.47 |
| Advances for Private Mortgage Insurance: | $0.00 |
| Pre-Acceleration Late Charges: | $59.56 |
| Property Preservation: | $0.00 |

| | |
|---|---|
| Property Inspections: | $111.25 |
| Total: | $113,351.50 |
| Less Suspense Balance or Escrow Surplus, if any: | $0.00 |
| Less Restricted Escrow Balance, if any: | $0.00 |
| Less Payments Applied to Escrow Advance, if any: | $0.00 |
| **Total Amount Due or Owed:** | **$113,351.50** |

The per diem interest due from October 2, 2014, is $8.80.

7. I know of no setoffs or counterclaims to this account.

FURTHER AFFIANT SAYETH NOT.

By: Brian Bolsen
Signature of Affiant

Brian Bolsen
Printed Name of Affiant

On behalf of PHH Mortgage Corporation

Its: Assistant Vice President
Affiant's Title

STATE OF New York )
) ss.
COUNTY OF ERIE )

Sworn to (or affirmed) and subscribed before me this 30 day of September 2014, by ________ (Name of Affiant), personally known to me to be the person who executed this Affidavit on behalf of the entity therein named.

WITNESS my hand and official seal

(Signature of Notary Public)

SEAL OR STAMP

NUNZIA WALKER
(Print, type or stamp commission name of Notary Public)

NUNZIA WALKER NOTARY PUBLIC STATE OF NEW YORK

My Commission Expires:

11/27/14

NUNZIA WALKER
NOTARY PUBLIC, STATE OF NY
QUALIFIED IN ERIE COUNTY
LIC.# 01WA6051407
MY COMMISSION EXPIRES 11/27/20 14

| | | |
|---|---|---|
| DOCKET NO. NNH-CV-14-6048487-S | : | SUPERIOR COURT |
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-3<br>Plaintiff, | : | JUDICIAL DISTRICT OF<br>NEW HAVEN |
| v. | : | AT NEW HAVEN |
| TOPE, ACHYUT M. , ET AL,<br>Defendant(s). | : | |

## AFFIDAVIT OF DEBT

Melissa Nowicki, being of lawful age and being first duly sworn on oath, states and deposes as follows:

1. I am employed as a(n) Assistant Vice President by PHH Mortgage Corporation ("Servicer"), the servicer for the loan at issue in this proceeding ("Loan"). The Servicer is providing mortgage loan services to The Bank of New York Mellon, FKA The Bank of New York, as Successor to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2004-3 ("Plaintiff"), and is authorized to act on its behalf. I am over the age of eighteen years, and I am authorized to make this Affidavit on behalf of the Servicer. If sworn as a witness I can competently testify to the matters stated herein. The statements set forth in this Affidavit are true and correct, to the best of my knowledge and belief.

2. In the regular performance of my job functions, I have access to and am familiar with business records maintained by the Servicer for the purpose of servicing mortgage loans. I have

personal knowledge of the manner in which these business records are created. These records (which include data compilations, electronically imaged documents, and others) are: (a) made at or near the time of the occurrence of the matters set forth by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business conducted by the Servicer. It is the regular practice of the Servicer to make and receive such records. To the extent records related to the Loan come from another entity, those records were received by Servicer in the ordinary course of its business, have been incorporated into and maintained as part of Servicer's business records, and have been relied on by Servicer. In connection with making this Affidavit, I reviewed and relied on those business records concerning the Loan.

3. The Servicer, or counsel as its agent, is in possession of the original promissory note and/or loan agreement ("Note") for this Loan, bearing the date of October 31, 2003, in which the Defendant(s) Achyut M. Tope and Geeta A. Joshi-Tope promised to pay the sum of $134,000.00.

4. The Note is secured by a mortgage ("Mortgage") dated October 31, 2003, on real estate together with all improvements thereon, located at 387 Sherman Avenue, New Haven, CT 06511 ("Real Estate").

5. The payment due on October 1, 2013, and all payments thereafter have not been made according to the terms of the Note and the Mortgage. The Loan is currently due and payable in full by virtue of the acceleration of the Loan pursuant to the terms of the Note and Mortgage.

6. As of October 14, 2016, as reflected in Servicer's business records (consisting of the Note, Mortgage and a printout from the electronic servicing system), attached hereto as Exhibit "A," there is due and owing on the Loan the sum of $131,392.82, which amount due includes the following:

| | |
|---|---|
| Principal Balance: | $107,056.69 |
| Interest through October 14, 2016 at the current variable rate of 3.25%: | $10,272.01 |
| Advances for Property/Hazard Insurance: | $4,094.21 |
| Advances for Taxes: | $10,892.35 |
| Advances for Private Mortgage Insurance: | $0.00 |
| Pre-Acceleration Late Charges: | $59.56 |
| Property Preservation: | $0.00 |
| Property Inspections: | $356.00 |
| Total: | $132,730.82 |
| Less Suspense Balance or Escrow Surplus, if any: | $0.00 |
| Less Restricted Escrow Balance, if any: | $0.00 |
| Less Payments Applied to Escrow Advance, if any: | ($1,338.00) |
| **Total Amount Due or Owed:** | **$131,392.82** |

The per diem interest due from October 15, 2016 is $9.53.

7. I know of no setoffs or counterclaims to this account.

FURTHER AFFIANT SAYETH NOT.

By: Melissa Nowicki
Signature of Affiant

Melissa Nowicki
Printed Name of Affiant

On behalf of PHH Mortgage Corporation

Its: Assistant Vice President
Affiant's Title

STATE OF NEW YORK )
) ss.
COUNTY OF ERIE )

Sworn to (or affirmed) and subscribed before me this 21st day of October 2016, by Melissa Nowicki (Name of Affiant), personally known to me to be the person who executed this Affidavit on behalf of the entity therein named.

WITNESS my hand and official seal
SEAL OR STAMP

Marina Dragotta
(Signature of Notary Public)

MARINA DRAGOTTA
(Print, type or stamp commission name of Notary Public)

Marina Dragotta
Notary Public, State of New York
01DR6134259
Qualified in Erie County
My Commission Expires 09 / 26 / 20 17

My Commission Expires:

9/26/2017

[redacted] = redacted information

[redacted]

# FIXED/ADJUSTABLE RATE NOTE

(One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| October 31, 2003 | FAIRFIELD | CONNECTICUT |
|---|---|---|
| [Date] | [City] | [State] |

387 SHERMAN AVENUE, NEW HAVEN, CT 06511

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $134,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is HSBC Mortgage Corporation (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.6250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on December 01, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 01, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY 14043

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $771.38. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November, 2006, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

# EXHIBIT

# C

**AFFIDAVIT**
**Federal Loss Mitigation Programs**
JD-CL-114 Rev. 3-12

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**Instructions**
*1. Prepare legibly.*
*2. Submit the original to the clerk of court.*

Docket number *(if available)*

Name of case *(Plaintiff v. Defendant)*
**THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-3 v. TOPE, ACHYUT M.**

| Judicial District | Address of Court *(Number, street and town)* | Return date *(if available)* |
|---|---|---|
| **New Haven** | **235 Church Street, New Haven, CT 06510** | |

Your name *(Affiant)*
**Michael Bitterman**

Address of property at issue *(Number, street, town, state, zip code)*
**387 Sherman Avenue, New Haven, CT 06511**

The undersigned, being duly sworn, deposes and says:

1. I am over the age of eighteen years of age and believe in the obligations of an oath.

2. I am the **Assistant Vice President** *(job title)* of PHH Mortgage Corporation ( Servicer ), the servicer for the loan at issue in this proceeding. The Servicer is providing mortgage loan services to HSBC Bank USA, N.A. ( Plaintiff ), and is authorized to act on its behalf

*(Plaintiff or Plaintiff's servicer)* and am authorized to sign on behalf of Plaintiff.

*(Plaintiff or Plaintiff's servicer).*

3. I am familiar with the business records and procedures of Servicer

*(Plaintiff or Plaintiff's servicer)* with respect to the mortgages that it owns and/or services.

4. Based on my review of the business records of Servicer

*(Plaintiff or Plaintiff's servicer)* and the account of the borrower *(the word "borrower" includes any and all borrowers and mortgagors of the mortgage loan that is the subject of this case)*, I have specific knowledge of the loan secured by the mortgage executed by the Defendant(s) in this case.

5. The loan secured by the mortgage for which plaintiff seeks foreclosure is subject to the following *(check all that apply):*

☒ The loan is not owned or guaranteed by a Government Sponsored Enterprise (GSE), is not guaranteed or insured by any federal agency, and is not serviced by a lender participating in the federal Making Home Affordable Program. *(If this box is checked, no further information regarding this paragraph 5, paragraph 6, or paragraph 7 is required. If this box is not checked, the appropriate boxes under subparagraphs 5a, 5b and 5c as well as paragraphs 6 and 7 (if applicable) must be checked.)*

5. a. With respect to the following programs under the federal Making Home Affordable Program (MHA) — the Home Affordable Modification Program (HAMP), the Second Lien Modification Program (2MP), the Home Affordable Foreclosure Alternatives Program (HAFA), and the Home Affordable Unemployment Program (UP), including any of such programs adopted by Fannie Mae and Freddie Mac:

☐ **The loan is eligible for review under the above programs and a review is pending at this time.**
☐ The loan is not eligible for review under the above programs because *(check all that apply and, if any box is checked, proceed to subparagraph 5b):*
 ☐ The loan's servicer does not participate in MHA.
 ☐ The property is not owner-occupied, is vacant, is condemned, and/or has more than four units.

- ☐ The loan was originated on or after January 1, 2009.
- ☐ The unpaid principal balance of the loan prior to capitalization of any arrearages, fees, and other costs exceed the applicable limit:
  - $729,750 for 1 unit;
  - $934,200 for 2 units;
  - $1,129,250 for 3 units; or
  - $1,403,400 for 4 units.
- ☐ The loan's servicer does not have the contractual authority to modify the loan under MHA per investor guidelines.

☐ The loan is eligible for review under the above programs but the borrower does not qualify for the following reasons(s) *(check all that apply):*

- ☐ Plaintiff or Plaintiff's servicer has made a "Reasonable Effort" to solicit the borrower (as defined under MHA Handbook Chapter II, Section 2.2.1, as amended from time to time) but:
  - ☐ was unable to establish "Right Party Contact" (as defined under MHA Handbook Chapter II, Section 2.2.2, as amended from time to time).
  - ☐ the borrower advised the Plaintiff or the Plaintiff's servicer that the borrower is not interested in participating in any of the above programs.
- ☐ Plaintiff or Plaintiff's servicer has not timely received all documentation necessary to complete a review for loss mitigation, specifically *(check all that apply):*
  - ☐ Proof of current income, specifically ______________________
  - ☐ Completed IRS Form 4506-T or 4506T-EZ
  - ☐ Dodd-Frank Certification
  - ☐ Request for Modification and Affidavit Form
  - ☐ Other: *(specify)* ______________________

**If none of the above reasons for disqualification are checked, please check all that apply under the following four sub-paragraphs:**

5. a. 1. Specific to HAMP:

- ☐ The subject loan is not a first mortgage loan. *(This denial reason applies to HAFA and UP as well).*
- ☐ The total payment on the first mortgage (principal, interest, taxes, insurance, and association fees, if any) is less than 31% of the borrower's monthly gross income. *(This denial reason applies to UP as well, unless the servicer has waived this requirement; with respect to Fannie Mae and Freddie Mac loans only, this denial reason applies to HAFA as well; for non-Fannie Mae and Freddie Mac loans, an additional denial reason must also be selected under HAFA.)*
- ☐ Payment cannot be feasibly reduced to make it equal to 31% of the borrower's monthly gross income without requiring excessive forbearance. *(If selected, denial reason must also be selected under HAFA).*
- ☐ Net Present Value Calculation does not favor modification. *(If selected, denial reason must also be selected under HAFA and UP).*
- ☐ The borrower received a previous modification under HAMP effective ______________ *(date)* and failed to comply or defaulted. *(If selected, denial reason must also be selected under HAFA; but this denial reason applies to UP as well).*
- ☐ The borrower received a trial plan modification but failed to make each payment by the end of the month in which it was due. *(If selected, denial reason must also be selected under HAFA; but this denial reason applies to UP as well).*
- ☐ Other *(specify)* ______________________

5. a. 2. Specific to HAFA *(Complete only if instructed above in sub-paragraph 5.a.1.):*

- ☐ The borrower did not respond to HAFA solicitations.
- ☐ The borrower communicated that the borrower was not interested in pursuing HAFA.
- ☐ The borrower did not return the signed Short Sale Agreement.
- ☐ The borrower did not obtain a contract for sale within the time permitted under the program.
- ☐ Other *(specify)* ______________________

5. a. 3. Specific to 2MP *(Complete only if this is a second lien):*

- ☐ Corresponding first lien has not been modified under HAMP.
- ☐ 2nd lien has an unpaid balance of less than $5,000.
- ☐ 2nd lien has a pre-modification scheduled monthly payment of less than $100.
- ☐ 2nd lien has already been modified under 2MP.
- ☐ 2nd lien does not require payments until the first lien is paid in full.
- ☐ Insured, guaranteed or held by FHA/VA/Rural Development.
- ☐ Other *(specify)* ______________________

5. a. 4. Specific to UP:

- ☐ No borrower was unemployed on the date UP was requested.
- ☐ No borrower will receive unemployment benefits in the month of the UP Forbearance Period Effective Date.
- ☐ The borrower's delinquency exceeds 12 months of the borrower's scheduled monthly mortgage payment, and the servicer has not waived this requirement.
- ☐ Other *(specify)* ____________________

5. b. With respect to the Federal Housing Administration (FHA), the United States Department of Veterans Affairs (VA), or the United States Department of Agriculture (USDA):

☐ **The loan is subject to one of the above-listed entities' loss mitigation programs and a review is pending at this time.**

☐ The loan is not subject to the above-listed entities' loss mitigation programs because the loan is not guaranteed, owned, or insured by any of the entities. *(If checked, proceed to subparagraph 5.c.)*

☐ The loan is subject to one of the above-listed entities' loss mitigation programs but does not qualify for the following reason(s) *(check all that apply)*:

- ☐ Plaintiff or Plaintiff's servicer has not received any response to solicitations for loss mitigation. *(If this box is checked, no other box under 5.b. needs to checked.)*

- ☐ Plaintiff or Plaintiff's servicer has not timely received all documentation necessary to complete a review for loss mitigation, specifically: *(If this box is checked, no other box under 5b needs to be checked.)*

  *(List all documentation not timely received)* ____________________
  ____________________
  ____________________

- ☐ The borrower is showing a deficiency when comparing monthly debt to income. *(If this box is checked, the applicable boxes under FHA-HAMP, or VA-HAMP need to be checked as well.)*
- ☐ Property is non-owner occupied. *(If this box is checked, no other box under 5.b. needs to be checked.)*
- ☐ Other *(specify)* ____________________

**Also check all that apply under the following two sub-paragraphs *(unless otherwise instructed above)*:**

5. b. 1. Specific to FHA-HAMP:

- ☐ Payment on the first mortgage is less than 31% of the current gross income.
- ☐ Payment cannot be feasibly reduced to make it equal to 31% of the borrower's current gross income without exceeding the partial claim limit.
- ☐ The borrower received a previous modification under FHA-HAMP and failed to comply or defaulted.
- ☐ Four full payments have not been made on the subject loan.
- ☐ The first payment due date from loan origination is less than 12 months ago.
- ☐ Back-end ratio is greater than 55%.
- ☐ The borrower qualified for a traditional home retention loss mitigation option but failed to sign and return the agreement or defaulted on the same.
- ☐ Other ____________________

5. b. 2. Specific to VA-HAMP:

- ☐ Payment on the first mortgage is less than 31% of the current gross income.
- ☐ Payment cannot be feasibly reduced to make it equal to 31% of the borrower's current gross income requiring excessive forbearance.
- ☐ Servicer has determined that foreclosure would be more advantageous to the VA than modification under VA-HAMP because: *(Specify)*
  ____________________
- ☐ The borrower qualified for a traditional home retention loss mitigation option but failed to sign and return the agreement or defaulted on the same.
- ☐ Other ____________________

5. c. With respect to the Federal National Mortgage Association (Fannie Mae) or the Federal Home Loan Mortgage Corporation (Freddie Mac):

☐ **The loan is subject to review under one of the above entities' loss mitigation programs and a review is pending at this time.**

☐ The loan is not subject to review under one of the above entities' loss mitigation programs because the loan is not owned or guaranteed by Fannie Mae or Freddie Mac. *(if checked, proceed to paragraph 6)*

☐ The loan is subject to review under one of the above entities' loss mitigation programs but does not qualify for the following reason(s) *(check all that apply)*:

**Note: all applicable information pertaining to HAMP and/or HAFA is set forth above in sub-paragraphs 5.a.1. and 5.a.2. and is incorporated by reference into this sub-paragraph as well.**

☐ Plaintiff or Plaintiff's servicer has not received any response to solicitations for loss mitigation.

☐ Plaintiff or Plaintiff's servicer has not timely received all documentation necessary to complete a review for loss mitigation, specifically:

*(List all documentation not timely received)* ______________________

☐ Other reasons for non-owner occupied property ______________________

☐ Other reasons for owner occupied property ______________________

6. *(Complete if only written denial letter was sent).* If the borrower has been denied assistance under any of the above referenced foreclosure avoidance programs, the borrower has been notified separately in writing of any denial as detailed above by way of a letter dated ____________ *(insert date of letter).*

**Check Only If Applicable:**

7. ☐ The borrower's time for seeking review of the decision to deny participation in any applicable loss mitigation program has expired; the borrower has no pending applications pursuant to any loss mitigation program listed above; and the borrower is not currently participating in a trial or other temporary period of a loss mitigation program.

| Signature of Affiant | | Address where signed *(Number, street, town, state, zip code)* |
| --- | --- | --- |
| ▶ [signature] Michael Bitterman | | 2001 Bishops Gate Blvd, Mt. Laurel, NJ 08054 |
| Subscribed and sworn to before me on: | Date signed: April 11, 2014 | Signed *(Notary Public)*: [signature] Kimberly D. Grimes |

Kimberly D. Grimes
Notary Public of New Jersey
Commission Expires 11/5/2018
ID# 2379716

JD-CL-114 Rev. 3-12

# EXHIBIT D

DOCKET NO: NNH-CV-14-6048487-S SUPERIOR COURT

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGHCERTIFICATES, SERIES 2004-3

J.D. OF NEW HAVEN

AT NEW HAVEN

VS

TOPE, ACHYUT M, ET AL

MARCH 24, 2017

## DEFENDANT'S MOTION TO DISMISS FORECLOSURE ACTION

## LACK OF SUBJECT MATTER JURISDICTION

As a preliminary matter, subject matter jurisdiction can be invoked at any time. Because of the critical facts discussed herein, Defendant once again requests the foreclosure action be dismissed. This motion to dismiss is in addition to and further supports and reinforces Defendant's Pro Se' motions to dismiss Plaintiff's foreclosure action for lack of subject matter jurisdiction, Docket No. 162, 164, and Defendant's motion for a summary judgement, Docket No. 150. **In sum, Plaintiff wrongfully submitted**:

**a.** There are TWO different Affidavits signed by two different people with different content (Docket Nos. 110 and 143). Please see Exhibit A. BOTH Affiants state in their respective Affidavits in paragraph 3 that " The Servicer, or counsel as its agent, is in possession of the original promissory note and/or loan agreement ("Note") for this Loan………". **It is not clear specifically WHO is in possession – Servicer or counsel** – its unclear WHO is this counsel being referred to. Both Affiants state that

they are employees of PHH Mortgage and have signed on behalf of PHH Mortgage as Assistant Vice Presidents (2 years apart). **There is nothing in EITHER Affidavits which states anything about Note assignments by HSBC Mortgage Corporation, the Originator of the Note; nor who, when, and how the Servicer or counsel obtained the Note and other documents.**

b. Affidavits are TWO years apart, November 2014 and November 2016, both in support of their motion for foreclosure

c. TWO different Notes as exhibits to the two different Affidavits (Docket Nos. 110, and 143). Please see Exhibit B.

d. BOTH Notes are redacted differently, FIRST bears stamp of "EMC IMAGED", SECOND NOTE does not.

e. NEITHER Notes are assigned to the Plaintiff, which is a REMIC Trust, Bank of New York Mellon

f. BOTH Notes signed by Mr. Feliz, Vice-President HSBC Mortgage Corporation (USA),

g. FIRST Note assigned to "J P Morgan Chase Bank, As Trustee", SECOND assigned in blank

h. The signature page of the SECOND Note assignment (Docket No. 143) is the DUPLICATE of the signature page of the FIRST Note assignment (Docket No. 110) – except that the specific assignment to "J P Morgan Chase Bank, as Trustee" is removed from the signature page of the FIRST Note assignment and used as the signature page of the SECOND Note assignment, Mr. Feliz's signature is a duplicate (exact same instance), making the SECOND Note assignment appear like it was

assigned in "blank". A simple examination of Mr. Feliz's signature on the FIRST Note assignment will establish that Mr. Feliz's signature on the SECOND Note assignment is a duplicate.

i. Both the Affidavits are under Oath

j. These TWO Affidavits and Notes assignments thereunder form the bases upon which Plaintiff has brought the foreclosure action and maintained the foreclosure action

k. The Court has relied upon these TWO different Affidavits and Notes submitted by the Plaintiff, Docket Nos. 110 and 143

l. NEITHER of the TWO Notes were submitted to the Court SIGNED IN INK as requested several times by the Defendant

m. NEITHER Affidavits is compliant with the requirements of Connecticut General Statute, Section 42a–3-203(a)

**2012 Connecticut General Statutes**

**Title 42a - Uniform Commercial Code**

**Article 3 - Negotiable Instruments**

**Section 42a-3-203 - Transfer of an instrument. Rights acquired by transfer.**

**Universal Citation:** CT Gen Stat § 42a-3-203 (2012)

(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this article and has only the rights of a partial assignee.

n. It is questionable if Mr. Feliz himself is aware that his signature is on the SECOND Note;

o. Mr. Feliz's signature on NEITHER Note assignments is notarized nor dated; the Court and the Defendant, therefore, are unable to validate if he signed BOTH Note assignments and the specific dates when the TWO Note assignments were signed (if they were signed in TWO separate instances),

p. NEITHER Affidavits are compliant with any or all requirements of Connecticut Practice Book Section 17-46, specifically; (1) they are not based on personal knowledge (not clear from their statements in their respective Affidavits exactly who has the original note (PHH Mortgage or counsel as agent)), (2) they constitute facts that would be admissible at trial (there are two versions of the Note assignments and its not clear exactly who has possession of the original Note – PHH Mortgage or counsel as agent) which are not stated in their Affidavit, (3) affirmatively show that the affiant(s) are competent to testify to the matters stated in the affidavit (by not stating critical material facts about both the location of the original note and not mentioning the TWO Note assignments in their respective Affidavits, yet attaching TWO different Note assignments – brings competency, intent, and credibility in to question), (4) and have attached sworn or certified copies of all papers or parts

thereof referred to in their Affidavits (there is no statement by either Affiants that all attachments are sworn or certified copies of the original – if they were so, there would not have been TWO different Note assignments); as required by PB 17-46.

NEITHER affiants have complied with any and all of the these requirements.

SUPERIOR COURT – PROCEDURE IN CIVIL MATTERS

Sec. 17-46. —Form of Affidavits Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto. (P.B. 1978-1997, Sec. 381.)

q. There has been no discovery process requested of the Court by the Defendant

r. For the reasons stated above, Plaintiff's Affidavits 110 and 143, therefore, are made in bad faith as defined in PB 17-48 and Defendant moves this Court for dismissing this entire foreclosure action and award relief to Defendant

SUPERIOR COURT- PROCEDURE IN CIVIL MATTERS

Sec. 17-48. —Affidavits Made in Bad Faith Should it appear to the satisfaction of the judicial authority at any time that any affidavit is made or presented in bad faith or solely for the purpose of delay, the judicial authority shall forthwith order the offending party to pay to the other party the reasonable expenses which the filing of the affidavit caused that party to incur, including attorney's fees. Any offending party or attorney may be adjudged guilty of contempt, and any offending attorney may also be disciplined by the judicial authority. (P.B. 1978-1997, Sec. 383.)

s. Defendant has filed several pleadings challenging Plaintiff's standing in this foreclosure action

Based on the foregoing, it is clear that, (1) Plaintiff has committed fraud in bringing this foreclosure action, (2) Plaintiff had no standing in bringing this foreclosure action, (3) Plaintiff is not compliant with several laws, regulations, procedures and requirements as stated above, (4) based on Defendant's motion for summary judgement (Docket No. 150) and the exhibits thereunder, it is clear that Defendant's Note underwent several "true sales" to satisfy requirements of REMIC Act between several intervening parties, there may exist many more copies of Defendant's Note with different assignments and therefore the possibility of different intervening parties to bring different foreclosure actions against the Defendant, as evidenced by this Plaintiff's action.

The first version of the Note (Exhibit A-Note), commenced the foreclosure action is Docket No. 110 Affidavit of Debt, the second version of the Note (Exhibit B) is Docket No. 143Affidavit of Debt.

The first Note docketed on 11/7/2014 in support of BONY's action to foreclose is assigned to JP Morgan Chase Bank, as trustee "Pay to the Order of, without recourse, JP Morgan Chase Bank, as Trustee" and it is assigned by HSBC Mortgage Corporation (USA), signed by its vice President Mr. Feliz. The Note bears a stamp "EMC IMAGED" on the first page.

The second Note (Exhibit B) is docketed on 11/18/2016, **two (2) years later,** is assigned in blank, with no prior assignments, states "Pay to the Order of, without recourse" and signed by its vice president Mr. Feliz, by HSBC Mortgage Company (USA).

This raises serious questions as to who the real party is that owned the Note when this foreclosure commenced; it clearly is not the Plaintiff in this action. In both Notes, HSBC is the assignor. There is no allonge attached to either Note. Defendant asserts Plaintiff committed fraud by docketing the first Note when the foreclosure action commenced and docketing the second Note 2 years later, both under sworn Affidavits. Defendant asserts, therefore, that Plaintiff does not have standing, has committed fraud, is non-compliant, and has damaged the Defendant in many ways; as argued by Defendant since the commencement of this foreclosure action and specifically in his motion for summary judgement, Docket No. 150.

Defendant had earlier in the proceedings raised the issue standing, issue of who owned the Note and the Mortgage and was not granted discovery and an evidentiary hearing on it. Not only can the issue of subject matter jurisdiction be raised at any time, even on a Motion to Open, but requires an evidentiary hearing to determine this issue.

"Jurisdiction over the subject matter is the court's power to hear and decide cases of the general class to which the proceedings at issue belong." Haigh v. Haigh, 50 Conn. App. 456, 460-61, 717 A.2d 837 (1998); Koskoff v. Planning & Zoning Commission, 27 Conn. App. 443, 446, 607 A.2d 1146, cert. granted, 222 Conn. 912, 608 A.2d 695 (1992) (appeal dis-missed November 10, 1992). Once the question of lack of jurisdiction of a court is raised, it "must be disposed of no matter in what form it is presented." Carten v. Carten, 153 Conn. 603, 610, 219 A.2d 711 (1966). "Whenever a court finds that it has no jurisdiction, it must dismiss the case,

without regard to previous rulings." Cross v. Hudon, 27 Conn. App. 729, 732, 609 A.2d 1021 (1992).

The Connecticut legislature, by adopting § 49-17, codifies the common-law principle that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage

In PHH Mortgage Corporation V. Melissa Cameron Et Al. 130 Conn. App. 238; 22 A.3d 1282; 2011 Conn. App. LEXIS 399 The Court conducted an evidentiary hearing on the defendant's motion to dismiss and issued its memorandum of decision determining that plaintiff lacked standing to pursue the foreclosure action because it was only the servicer, and not the holder, of the subject promissory note at the time the foreclosure action was commenced

Although the law day has passed in the present action, "a finding that the court lacked jurisdiction over either the person or the case" provides a basis for opening a judgment of strict foreclosure after the vesting of title Highgate Condominium Ass'n., Inc. v. Miller, supra, 129 Conn. App. 435

"...where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties."(Citations omitted; internal quotation marks omitted.) Conboy v. State, 292 Conn. 642, 652-54, 974 A.2d 669 (2009); see also Coughlin v. Waterbury, 61 Conn. App. 310, 315-16, 763 A.2d 1058 (2001).

WHEREFORE, Plaintiff respectfully requests the Court dismiss the foreclosure action in its entirety based on the foregoing, pleadings on the docket and facts and the law presented herein, and award damages to the Defendant per Defendant's motion for summary judgement Docket 150, or resolve the issue of jurisdiction by granting the due process of discovery and evidentiary hearing following prior Connecticut court precedent.

Respectfully Submitted,

Achyut M. Tope, Defendant Pro Se

CERTIFICATION

I hereby certify that a copy of the above was electronically delivered on 2/27/17 to all counsel of record: Bendett & McHugh, 270 Farmington Ave, Suite 151, Farmington CT 06032, and William Michael Raccio, 2046 Whitney Ave, Hamden CT 06517.

Achyut M Tope, Defendant Pro Se.